UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELIZABETH A. HIATT, ) | |
|     *Plaintiff*, ) | |
| ) | |
|     *vs*. ) | 1:09-cv-01082-JMS-RLY |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of Social ) | |
| Security ) | |
|     *Defendant*. ) | |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff, Elizabeth Hiatt, applied for disability insurance benefits through the Social Security Administration ("SSA") in December 2005. [R. 19.]¹ After a series of administrative proceedings and appeals, including a hearing in October 2008 before Administrative Law Judge ("ALJ") Reinhardt Korte, the Commissioner finally denied her application. She then filed this action under 42 U.S.C. § 405(g), requesting that the Court review that denial.

### BACKGROUND

Ms. Hiatt contends that she has been disabled since November 2005. [R. 89.] Although she has several other diagnosed impairments, the only ones relevant here are her depression and anxiety and her degenerative back disease. The ALJ found that those conditions qualify as "severe" impairments for disability purposes, but not so severe as to preclude her from working in several types of "light" jobs, including as a janitor, maid, or inventory clerk. [R. 21, 29.]

---

¹ Upon the written consent of the parties, this matter has been assigned to the magistrate judge for all proceedings, including for the entry of judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Dkt. 17.]

### A. Mental Impairments

Ms. Hiatt's mental impairments stem in part from her history of childhood sexual abuse at the hands of her step-father. As a result of that abuse, she testified at her hearing that "when somebody tries to force [her] to do something or wants [her] to do something that maybe [she] doesn't] want to do[,]…[she] can't handle it. It's just like [she has] an emotional breakdown." [R. 504.] But, from the record, no such breakdown appears to have ever occurred at the workplace. She does, however, have a history of suicide attempts. She testified to having attempted to commit suicide five different times since she was thirteen, with three of those attempts coming between January 2006 and May 2007, while her disability application was pending. [R. 504, 503.]

At the hearing before the ALJ, Dr. Jack Thomas testified about Ms. Hiatt's mental diagnoses. He reported finding "at least two suicide attempts, four by history." [R. 515-16.] Despite her mental health issues, he believed that she could still perform jobs that required only occasional interaction with the public and additionally involved only simple, repetitive tasks. [R. 518.] Given her very quick recovery following her two hospitalizations for suicide, Dr. Thomas believed that she could appropriately handle criticism from supervisors in the workplace. [R. 518-19.]

Dr. Thomas' testimony about Ms. Hiatt's continued ability to work conflicted with the opinion of Dr. Robert Anderson, who is an internist and Ms. Hiatt's treating physician. In a December 2006 Residual Function Capacity ("RFC") questionnaire, Dr. Anderson had indicated his belief, among other things, that Ms. Hiatt was "[i]ncapable of even 'low stress' jobs." [R. 345.]

With respect to Dr. Anderson's "low stress" restriction, the ALJ commented during the hearing that it must have been "based on her subjective complaints" because the ALJ "[didn't] see anything in [Dr. Anderson's] clinical notes that would support" such a restriction. [R. 511.] Ms. Hiatt's attorney initially conceded the point, [*id.*], but later clarified that Ms. Hiatt's history of suicide attempts might support that limitation, [R. 514].

### B.  Back Pain

The other severe impairment relevant here is Ms. Hiatt's degenerative back disease. In 2006 and 2007, she received four epidural spinal injections for her back pain. [R. 305, 363, 423, 427.] She also was prescribed, and continues to take, various medications for it, including Lortab. [R. 471.]

In his RFC questionnaire, Dr. Anderson opined that Ms. Hiatt's back pain causes her significant physical limitations. For example, he opined that she can only sit, stand, or walk under two hours in an eight-hour workday and would need unscheduled breaks. [R. 346-47.]

Dr. Anderson's opinions were contradicted at the hearing by Dr. Loyd Stump. Noting the lack of any "extensive orthopedic treatment" and the other evidence in the record, Dr. Stump testified that Ms. Hiatt could perform light work, and might even be able to perform medium work. [R. 510.]

During Dr. Stump's testimony, the ALJ commented that he didn't see anything in Dr. Anderson's notes to support a conclusion that Ms. Hiatt needed unscheduled breaks. [R. 511.] Neither Dr. Stump nor Ms. Hiatt's attorney disagreed. [*See id.*] Likewise, although Dr. Anderson's RFC questionnaire had also indicated that Ms. Hiatt had manipulative limitations, both the ALJ and Dr. Stump agreed "that there's no orthopedic workup to justify" such a limitation. [R. 513.] Ms. Hiatt's attorney didn't suggest otherwise. [*See id.*]

## DISCUSSION

This Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, …can [she] perform her past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). To answer the questions posed at Steps Four and Five, the ALJ determine the claimant's residual functional capacity (the "RFC"), in other words "the most [the claimant] can still do despite [all the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

Here, Ms. Hiatt claims that the ALJ erred in computing the RFC for Step Five, specifically regarding the ALJ's treatment of her previous suicide attempts, Dr. Anderson's opinions, her back pain, her demeanor during the hearing, and her record of domestic battery arrests.

### A.  Ms. Hiatt's Suicide Attempts

As her first argument in support of a remand, Ms. Hiatt argues that the ALJ improperly refused to find her three attempted suicides between January 2006 and May 2007 as "indicative of a disabling condition."  [Dkt. 19 at 7.]  She doesn't, however, make any effort to link those suicide attempts to the ALJ's assessment of her RFC, the focus of the inquiry here.

To the extent that she claims that suicide attempts in and of themselves automatically entitle claimants to collect disability, the Court rejects that claim.  First, Ms. Hiatt hasn't cited any authority to support it.  Second, the Court will not create such authority here for to do so may create the absurd result of encouraging unsuccessful suicide attempts.

To the extent that she really intends to claim that her suicide attempts reflect an underlying mental condition incapable of sustaining the stress of the workplace, Dr. Thomas' testimony to the contrary constitutes "substantial evidence" to support the ALJ's finding and preclude remand.  *See Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 391 (7th Cir. 1987) ("[C]ourts will rarely be able to say that the administrative law judge's finding was not supported by substantial evidence.").  And although the ALJ accepted Dr. Thomas' miscounting of the number of suicide attempts during the pendency of her application—he thought there were two such attempts, despite the three mentioned in the record—that mistake is a harmless one that cannot trigger remand, *see Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (explaining that harmless-error analysis applies in the Social Security context).  Ms. Hiatt

doesn't argue, much less establish, that her recovery from the other suicide attempt was longer than were her recoveries from her previous attempts, which, as Dr. Thomas explained, were quick enough to permit Ms. Hiatt to handle the day-to-day stress of the workplace.

### B.  Dr. Anderson's Opinions

Next, Ms. Hiatt complains about the ALJ's decision to afford "little weight" to Dr. Anderson's opinion about the extent of her limitations.  [R. 27.]  She argues that the ALJ's proffered reason for discounting the opinion was impermissibly conclusory.

Under SSA rules, if an ALJ doesn't completely accept the opinion of a treating physician like Dr. Anderson, the ALJ's written decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers…the reasons" why the ALJ discounted the opinion.  SSR 96-2p.

Here, the ALJ wrote that Dr. Anderson's RFC questionnaire "appears to be based exclusively on the claimant's subjective complaints" because "it is not consistent with his treatment notes at the time," [R. 27 (citing R. 349-60)], and because it is "not consistent with the more recent treatment notes which indicate the claimant's condition is 'stable,'"[*id.* (quoting R. 447)].  The Court finds that explanation, punctuated as it with citations to the record, sufficiently explains the ALJ's rationale for the purposes of judicial review.

To whatever extent that the ALJ could have even arguably erred by not more fully discussing the evidence supporting his conclusions, any error qualifies as harmless and cannot trigger a remand.  Ms. Hiatt has been unable to identify a single treatment note from Dr. Anderson that could support the additional limitations reported in his RFC questionnaire.  Nor has she cited any evidence to suggest that her condition was anything other than stable at the

time of her hearing.[2] Thus, the ALJ's ultimate assessment of Dr. Anderson's opinions is unrebutted.

### C. The ALJ's Assessment of Ms. Hiatt's Back Pain

Given that "once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms [such as pain] merely because they are unsupported by objective evidence," *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (quotation omitted),[3] Ms. Hiatt also argues that the ALJ erred in using a lack of objective evidence as a basis to discount her allegations of pain, [R. 25 ("She alleges…rather severe limitations…due to agonizing back pain….[But] the clinical findings do not support the claimant's subjective allegations with regard to the severity of her physical limitations.")].

Here, however, the ALJ discounted the testimony for several other reasons, only one of which was a lack of medical evidence corroborating the extent of her allegations of pain. Among other things, the ALJ noted that her testimony was "vague and general, lacking the specificity which might otherwise make it more convincing." [R. 26.] Further, as discussed later, the ALJ thought that Ms. Hiatt's claim of constant pain was inconsistent with her ability to testify at the disability hearing without any apparent discomfort. [R. 27.] He also found

---

[2] Ms. Hiatt also argues that because Dr. Anderson believed that Ms. Hiatt would miss more than four days of work each month and because the vocational expert testified that a person like Ms. Hiatt could miss a maximum of one-and-a-half days per month and still sustain gainful employment, a remand is required. [*See* dkt. 19 at 11-12.] But, as explained above, the ALJ was entitled to disbelieve Dr. Anderson's opinions. Once he sufficiently explained his reasons for doing so, he wasn't obligated to discuss them further. *Cf. Zatz v. Astrue*, 2009 U.S. App. LEXIS 21915, *11-12 (7th Cir. 2009) (per curiam) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations…."); *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007).

[3] *Accord* 20 C.F.R. § 404.1529(c)(2)("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

significant her inability to convince her treating physician—who repeatedly characterized her back pain as "stable"—to recommend anything beyond "routine and/or conservative" treatment for it.  [R. 25, 27.]

With regard to that last point, Ms. Hiatt argues that she wouldn't have undergone "painful injections on repeated occasions" were she not truly in pain, [dkt. 19 at 12, 15], attempting to make a similar point as the one that the court found persuasive in *Carradine*, *see* 360 F.3d at 755 (finding it highly improbable that the claimant would have agreed to "the surgical implantation in her spine of a catheter and a spinal-cord stimulator, merely in order to strengthen the credibility of her complaints of pain" and as improbable that medical personnel would have agreed to perform the procedure had they thought the claimant to have been "faking" her pain). But, painful or not, her argument doesn't attempt to contradict the ALJ's assessment of the treatment regime as conservative and/or routine.  Furthermore, Ms. Hiatt has not apparently received any epidural spinal injections since February 2007, [R. 423], over a year and a half before her disability hearing.

In any event, because the ALJ didn't rely on the "mere[]" lack of objective medical evidence that Ms. Hiatt's pain is as severe as she claims, *Carradine* cannot control, 360 F.3d at 753.  Instead, after finding that Ms. Hiatt had a medical condition that could reasonably be expected to produce pain, [R. 24], and after finding that the objective medical evidence didn't establish the degree of pain that she claimed to suffer, the ALJ could, and did, weigh her allegations of pain against the seven factors listed in 20 C.F.R. § 404.1529(c)(3).  [*See* R. 25-27, explicitly considering each factor.]  That regulation governs situations like this one where the claimant's symptoms possibly "suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3).

Accordingly, the Court cannot find his assessment of Ms. Hiatt's credibility about the extent of her pain to be patently wrong, as is required for a reversal, *Prochaska*, 454 F.3d at 738.

### D.  Ms. Hiatt's Demeanor During the Hearing

Ms. Hiatt next argues that the ALJ erred by assigning "some slight weight" to Ms. Hiatt's apparent ability to sit comfortably during her hearing.  [R. 27.]  She notes, correctly, that the Seventh Circuit is "uncomfortable" with the so called sit-and-squirm test.  *See, e.g.*, *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) ("We doubt the probative value of any evidence that can be so easily manipulated as watching whether someone acts like they are in discomfort.").  But, at least in cases like this one where "the witness showed no signs of pain, there is no danger that she attempted to manipulate the hearing officer by squirming.  As one of several factors that contributed to the hearing officer's credibility determination, [the Court] cannot say [the reference to the claimant's demeanor] rendered that judgment 'patently wrong.'"  *Id.*  So the ALJ's reference to it here cannot constitute reversible error.

### E.  Ms. Hiatt's Arrests for Domestic Battery

Finally, recounting the rule that the ability to perform minimal daily activities doesn't equate to the ability to obtain employment, *see Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), Ms. Hiatt argues that the ALJ improperly commented—in a footnote—that Ms. Hiatt's two arrests (and incarcerations) for domestic battery "tend[] to cast doubt on the severity of [her] physical limitations," [R. 26 n.4].[4]  Even if the Court were to assume, without deciding, that arrests for battery have no probative value on the veracity of Ms. Hiatt's claims of constant, and disabling, back pain, she would still not be entitled to relief.  The testimony from Drs. Stump and Thomas, accepted by the ALJ in full, provides more than substantial evidence to support the

---

[4] The circumstances surrounding these arrests don't appear in the record; the arrests are merely referenced in a medical report.  [*See* R. 115.]

ALJ's assessment of the extent of Ms. Hiatt's limitations. Excluding the arrest evidence wouldn't have altered the ALJ's ultimate conclusion, therefore his consideration of it was, at most, harmless error.

## CONCLUSION

"The standard for disability claims under the Social Security Act is stringent….Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 2010 U.S. App. LEXIS 2604, *5 (7th Cir. 2010) (per curiam). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Ms. Hiatt doesn't qualify for disability benefits; therefore, the Court **AFFIRMS** the Commissioner's denial of her applications. Final judgment will be entered accordingly.

06/07/2010

*[signature: Jane Magnus-Stinson]*

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Thomas E. Hamer
tom@tomhamerlaw.com